Walter JACKSON, Petitioner,

v.

STATE of SOUTH CAROLINA, Respondent.

Walter JACKSON, Plaintiff,

v.

J. M. CRESTWELL, Individually and as Chief of Police, Abbeville, S. C., C. H. Woodhurst, Individually and as Policeman of Abbeville, S. C. Police Department, and R. L. Noblin, Individually and as Policeman of Abbeville, S. C. Police Department, Defendants.

Walter JACKSON, Plaintiff,

v.

Geddes D. ANDERSON, Individually and as Public Defender, Defendant.

Walter JACKSON, Petitioner,

v.

STATE of SOUTH CAROLINA, Respondent.

Walter JACKSON, Plaintiff,

v.

Stanley E. ALEXANDER, Individually and as Attorney at Law, Defendant.

Civ. A. Nos. 79–1776–5 to 79–1780–5.

United States District Court,
D. of South Carolina,
Columbia Division.

Sept. 14, 1979.

## ORDER

HEMPHILL, District Judge.

This order is entered in all five of the above–styled cases to conserve the court's

time. The cases are before the court on the motion of Walter Jackson to proceed therein *in forma pauperis*. By letters bearing various dates, Jackson asks for an automatic appeal of any dismissal of either case, or a denial of authorization to proceed *in forma pauperis*. Although permission to file the various pleadings without payment of the statutory fees is granted, pursuant to recommended procedure in such cases,[1] the complaints and petitions will be dismissed, for reasons hereinafter stated, without service on any defendant or respondent named.

Jackson is under conviction for the shotgun slaying of his eleven month old son. He contends that he has been "framed" by Abbeville County and South Carolina officials. Lengthy pleadings submitted by him clearly reveal that Jackson now has an appeal pending before the Supreme Court of South Carolina, but despite explanations previously sent to him about the necessity to exhaust state remedies before seeking federal relief from an allegedly unconstitutional conviction, Jackson has continued to submit pleadings prepared in violation of instructions also sent to him about completing § 1983 complaints and § 2254 petitions.[2]

In an earlier case, *Jackson v. State of South Carolina*, Civil Action No. 79–887, Jackson named thirteen persons as either defendants or respondents, including some of the persons named in the five cases *sub judice*.[3] The court dismissed the complaint

---

1. *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979).

2. To aid it in reviewing a large number of such cases submitted by state and federal prisoners, this court has adopted for mandatory use standardized questionnaires and pleading forms for all *pro se* cases filed under 42 U.S.C. § 1983, and for all cases, *pro se* or counselled, filed under 28 U.S.C. §§ 2254 and 2255. Forms for use in collateral attacks are promulgated by the Administrative Office of the United States Courts, and such forms are sanctioned by the Rules Governing Section 2254 and Section 2255 Cases. The § 1983 forms are those contained in the so–called Aldisert Committee Report mentioned in *Boyce, supra*, 595 F.2d at 950–51.

 A requirement for *pro se* prisoners to use standardized forms, and to comply with reasonable instructions for the completion of such

forms (such as not merging argument with factual averments, as Jackson insists upon doing), has been upheld. For Jackson's information, copies of two unpublished opinions of the Court of Appeals in *Parks v. Harrington*, 553 F.2d 97 (4 Cir. 1977) and *Welsh v. Court*, 556 F.2d 576 (4 Cir. 1977) will be attached to his copies of this order, because of the probable unavailability of these cases in prison.

3. Jackson earlier joined as defendants–respondents the State of South Carolina, Circuit Judges Nicholson and (Paul) Moore, Solicitor Jones, Assistant Solicitors Thomason and Rosenblum, Magistrate Manos of Abbeville County, the Sheriff of Abbeville County, the Chief of Police of Abbeville, two Abbeville city policemen, a private practicing attorney (Stanley E. Alexander), and a Public Defender (Geddes A. Anderson). The Chief of Police, the two police

in an order filed on May 10, 1979, but directed the clerk to send Jackson a set of approved forms for his use in submitting a petition for habeas corpus relief, and clearly cautioned Jackson that he must comply with the instructions on the form, and not merge "wholly unnecessary and frivolous argument" with his statement of facts. The order then expressly authorized the United States Magistrate at Columbia "to return any § 2254 petition later submitted by plaintiff Jackson that is completed in violation of the instructions contained on the form, together with an appropriate explanation of the defect(s)." [4]

■ The petitioner later sent in three separate petitions. The pleadings were jumbled, and had the appearance of being an unsuccessful effort by Jackson to send in three conformed counterparts of one petition. On June 14, 1979, the magistrate returned the three forms to Jackson with a letter explaining in detail why the petitions failed to comply with this court's order.[5] Jackson then submitted a relatively large batch of additional material to the clerk. Again, the magistrate wrote Jackson to explain that he should exhaust his state remedies before seeking federal habeas corpus relief, and that his attempts to file civil rights cases seeking damages were improper because such cases could not be utilized to challenge a presumptively valid state conviction.[6]

■ Jackson has now submitted the five latest cases proffered by him, and despite earlier caveats that he should comply with instructions, and use only approved forms, again the court is called upon to read unnecessarily long pleadings in an effort to determine the substance of the claims he is

officers, and the two attorneys are joined in some of the latest cases now before the court.

4. Rule 2(e), Section 2254 Rules, Title 28, United States Code.

5. A copy of the magistrate's letter is annexed hereto, and the magistrate's action is expressly approved as being in keeping with the authority delegated to him. It should be noted that the magistrate informed Jackson that he should complete his pending appeal to the Supreme Court of South Carolina before seeking federal relief on the constitutional claims raised in state courts.

6. The letter of the magistrate dated August 1, 1979 will also be filed, and a copy is annexed hereto. Although the magistrate did not cite any of the cases so holding, several cases in the Fourth Circuit have held that § 1983 is not available for state prisoners to collaterally attack their convictions. The rule is succinctly stated in *Macklin v. Court*, No. 75–1085 (4th Cir., August 25, 1975):

"A suit for damages under the civil rights statutes is improvidently brought when the asserted constitutional deprivation is an integral part of a presumptively valid state proceeding since the issue turns on the validity or invalidity of the convictions ... Consequently, the proper manner in which Macklin may raise the alleged invasion of his constitutional rights is by a writ of habeas corpus ... Before a federal action for habeas corpus relief may proceed, however, state court rem-

edies must first be exhausted ..." [citations omitted]

Other cases affirm the principle stated in *Macklin*. These are *Smith v. McAlea*, No. 75–8109 (October 21, 1975); *Turner v. Kent*, No. 75-1574 (February 9, 1976); *La Pietra v. Hines*, No. 75–1741 (May 19, 1976); *Williams v. Warden*, No. 75–8144 (June 2, 1976); *Van Fossen v. Baker*, No. 75–1914 (June 29, 1976); *Kemp v. Hamill*, No. 75–2100 (August 19, 1976); *Jones v. Bledsoe*, No. 76–1259 (December 1, 1976); *Moorefield v. Stafford*, No. 76–2434 (September 28, 1977); *Chapman v. McCroskey*, No. 77–2286 (April 3, 1978), citing *Rimmer v. Fayetteville Police Department*, 567 F.2d 273 (4 Cir. 1977); and *Martin v. Crissman*, 594 F.2d 858 (4 Cir. 1979). It is only when a prisoner succeeds in obtaining habeas corpus relief because of a violation of his constitutional rights by someone affiliated with prosecution forces that he may then bring a § 1983 civil action against the person whose misconduct led to the illegal conviction, assuming that person does not have immunity in an action for damages. Thus, in *Ward v. Eagerton*, No. 75–2333 (June 28, 1977), a prisoner claimed an officer perjured himself at the prisoner's trial. The court observed, as to this claim:

" * * * As for Ward's claim that Eagerton perjured himself in connection with Ward's various criminal proceedings, we think that is not cognizable under § 1983 until Ward has brought a successful petition for habeas corpus, which he has not yet done. *Guerro v. Mulhearn*, 498 F.2d 1249 (1st Cir. 1974)."

submitting for consideration.[7] The cases will be discussed separately.

## Jackson v. State
## No. 79–1776–5

 This lengthy pleading (12 closely-typed pages) is clearly denominated by Jackson as a petition for a writ of habeas corpus. Jackson has refused to use an approved form, and he has obscured his factual allegations by blending such factual averments as are submitted with citations of cases and legal argument. This alone is adequate reason to reject the petition. However, a more compelling reason is apparent on the face of the petition. Jackson states, on the first page of the petition, that his post–conviction case "is on appeal in the State Supreme [sic] Court." It is obvious, therefore, that state remedies have not been exhausted as to some of his grounds for relief, if not all. His grounds appear to be (1) denial of a right of direct appeal of his conviction; (2) perjury and racial discrimination at his trial; (3) denial of effective assistance of counsel before, during, and after trial; (4) false accusations that he committed the crimes (murder, assault and battery, and possession of an illegal weapon) for which he was charged; (5) insufficient evidence of guilt to support the conviction; (6) denial of bail before trial; (7) tampered–with evidence; (8) failure of prosecution to call two key witnesses; (9) illegal search; (10) denial of right to confront all witnesses; (11) the withholding of evidence favorable to him by the prosecution; and (12) slander of the petitioner at his trial.[8]

The court has no way of determining at this stage whether all the grounds set out in Jackson's petition have been raised by him at his trial[9] or in his post–conviction case. If all the federal grounds that have facial merit as § 2254 issues have been submitted in the petitioner's state post–conviction case, then he can later submit these grounds in a proper form of § 2254 petition if the Supreme Court of South Carolina denies him relief, but to the extent that any grounds have not been submitted to the courts of South Carolina, Jackson is again advised that *he must exhaust all remedies available to him in the state courts before he may properly seek federal relief under 28 U.S.C. § 2254.* Because it is obvious that state remedies have not been exhausted, there is no purpose to be served by sending Jackson additional forms for seeking a writ of habeas corpus. He may request such forms if the Supreme Court of South Carolina turns him down on his pending appeal.

 For the reasons outlined above, Jackson's petition in No. 1776 will be dismissed pursuant to Rules 2(e) and 4 of the Section 2254 Rules, because the petition is not in proper form, and because the petitioner has failed to exhaust state remedies.[10] Treating the petitioner's letter in which he requests an automatic appeal as a request for a certificate of probable cause under Rule 22(b), Federal Rules of Appellate Procedure, the request is denied be-

---

**7.** This court will not again pore over pleadings Jackson may submit that violate the court's repeated explanations to this prisoner. The cases that uphold a prisoner's right of access to the courts do not require courts to temporize with a *pro se* litigant who contumaciously rejects reasonable instructions as to the completion of approved forms made available to him by the court upon request to facilitate his right of access.

**8.** Several of these grounds were set out by Jackson in Civil Action No. 79–887, in which he asserted sixteen identifiable claims of alleged violations of his and his wife's constitutional rights. Because constitutional rights are personal, the petitioner would have no standing to assert his wife's rights, however.

**9.** Jackson complains at one point in these several cases that he entered a plea of guilty to the weapons charge. He apparently went to trial on the murder charge. The disposition of the assault and battery charge is not clearly revealed. This charge is discussed later herein, under No. 79–1777–5, *Jackson v. Crestwell*, a civil rights complaint. At one point, Jackson says the case was nol prossed. If this is correct, he was apparently indicted for the assault offense. At another point in his voluminous submissions, he states he was not indicted.

**10.** *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

cause the attempt to appeal is frivolous, is not taken in good faith, and represents an effrontery to this court, and an unjustified burden to the Court of Appeals.[11]

### Jackson v. Crestwell, et al.
### No. 79–1777–5

This pleading is characterized by Jackson as a civil action for damages. The three defendants are the Chief and two officers of the Abbeville Police Department. The plaintiff alleges that the defendants acted under color of law in falsely accusing him in a warrant of assaulting one Imogene Dixson. The plaintiff states that the alleged assault victim "has testified that plaintiff never assuslted [sic] her," and that as a result of the false accusation, he was "held in jail over two months to answer to that charge," for which he was not indicted by a grand jury. Plaintiff requests damages for this alleged violation of his constitutional rights.

■ This complaint appears to be frivolous when read in the light of the plaintiff's other cases. The plaintiff acknowledges that he was charged with murder, and his habeas corpus petitions reveal that he received a preliminary hearing on that charge, was indicted, and was convicted after trial. Imogene Dixson is identified in Civil Action No. 79–887 as Jackson's wife, and he alleges on page 3 of his petition in that case that she testified for the State at his murder trial, and possibly committed perjury under what Jackson describes as a form of coercion in the form of comments to her about her dead child. In his petition in No. 79–1776–5, Jackson states that Imogene Dixson went to the police station for help after their child was killed "by a gun going off with the plaintiff." In that case, he implies that he was drinking when a weapon was fired, and he concedes that he entered a plea of guilty to possession of a sawed–off shotgun, after which a charge of assault and battery was nol–prossed. He argues that only one shot was fired, so he could not be accused properly of assault and battery as to his wife, and the murder of his child. In view of all the circumstances alleged by Jackson, coupled with the fact that one confined on a murder charge is not entitled to bail in South Carolina under Article I, § 15 of the South Carolina Constitution, it is highly improbable that Jackson can prove any set of facts against the defendants named that would entitle him to relief. However, because this improbability cannot be stated with any great degree of certainty, the clerk is directed to send Jackson a packet of approved § 1983 forms for his use in submitting a complaint for later possible filing and service upon the persons who allegedly falsely accused him of assault and battery with intent to kill his wife. The plaintiff is cautioned again that he should comply with the clear instructions on the approved § 1983 complaint form as to stating facts, rather than argument. He is at liberty to submit a brief containing argument as to both the facts and the law applicable to his claim if he desires to do so, but such argument should be in a separate writing, and care must be exercised to avoid mixing the argument with facts where only facts are to be stated in the approved complaint form. *Parks v. Harrington,* and *Welsh v. Court, supra.* If another complaint is submitted as to the false arrest claim, it may not be reached on the merits in view of Jackson's automatic appeal requests, however.

### Jackson v. Anderson
### No. 79–1778–5

Jackson has also clearly styled his pleading in this case as a civil action based on 42 U.S.C. § 1983. Jackson alleges that the defendant was appointed by Judge Nicholson to represent him in his application for post-conviction relief. The defendant is criticized for not discussing Jackson's case with him, and for not answering his letters. Jackson contends that Judge Nicholson ruled on fifteen constitutional grounds

11. It can be seen from date stamps that some of Jackson's pleadings now under review have been sent by him to the Court of Appeals earlier. Apparently, someone acting for that court returned the material to Jackson.

without having a transcript before him, and he faults the appointed attorney for not obtaining "a complete copy of [the] trial transcript." The plaintiff contends that if he had received effective assistance of counsel, he might have prevailed at his post–conviction hearing on January 3, 1979.

■ The plaintiff does not specify the relief he seeks in this case. If he seeks damages, the public defender would have immunity under § 1983. *Minns v. Paul,* 542 F.2d 899 (4th Cir. 1976)[12] Declaratory relief in this case would be an empty gesture. If the plaintiff later applies for federal habeas corpus relief on any grounds decided by Judge Nicholson, it may be necessary for this court to apply the tests laid down in *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), to determine if the plaintiff received a full and fair hearing in the post–conviction case heard by Judge Nicholson. In such event, the quality of the representation Jackson received may have some bearing on the *Townsend v. Sain* evaluation, but such attempted evaluation now could not be attempted without all available records, and would be premature in any event.[13] It is not possible to reasonably construe the pleading as a request for a transcript, for no showing of a particularized need is made. Therefore, the complaint in this case fails to state a claim that would entitle the plaintiff to federal relief at this point in time, if ever, and it is clearly dismissible for that reason.

### *Jackson v. State*
### No. 79–1779–5

This pleading is characterized by Jackson as a § 1983 complaint also. It was appar-

ently sent to the Court of Appeals, and returned to Jackson later. Jackson contends in this action that he has been framed on a murder conviction, and he cites *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), among other authorities, in support of his contention that his conviction is unlawful. He complains because South Carolina apparently required him to use one of its own approved forms to apply for post–conviction relief, and accuses South Carolina courts of stalling tactics in the handling of his collateral attack of his murder conviction.[14] Other allegations allege errors in his trial.

■ It is clear that the complaint in this case contains only an abbreviated version of the claims Jackson has asserted in his petition for habeas corpus in No. 79–1776–5. Accordingly, it is also dismissible for the reasons stated earlier as to that petition.

### *Jackson v. Alexander*
### No. 79–1780–5

In this § 1983 complaint, Jackson seeks damages from the attorney allegedly retained by his wife to defend him on the murder charge. Jackson implies that the attorney had a conflict of interest in the case because he failed to reveal to the trial court that Jackson's wife had retained him.

■ If the plaintiff has a justiciable claim of a conflict of interest, such claim should be asserted in a petition for a writ of habeas corpus, again after all remedies in the courts of South Carolina have been exhausted as to such claim.[15] A retained at-

---

12. The *Minns* case involved a defense of a criminal charge, but no reason exists to justify a failure to apply its holding in a post–conviction case also.

13. It is not possible to construe this complaint as a § 2254 claim for two reasons. The plaintiff, as earlier emphasized, has not exhausted state remedies, and, as stated in *Roberts v. Leeke,* Memorandum Decision No. 76–8329 (4th Cir., December 22, 1976), citing *Noble v. Sigler,* 351 F.2d 673, 678 (8th Cir. 1965), cert. denied, 385 U.S. 853, 87 S.Ct. 89, 17 L.Ed.2d 81 (1966), "§ 2254 cannot be utilized to attack irregularities in state collateral proceedings."

14. The United States Supreme Court has recognized that requiring state remedies to be exhausted delays an applicant for federal relief. *Preiser v. Rodriguez,* 411 U.S. 475, 494–95, 93 S.Ct. 1827, 1838–39, 36 L.Ed.2d 439 (1973).

15. Presumably the same attorney also represented Jackson on the illegal weapon charge to which he entered a guilty plea. If Jackson later seeks federal relief under § 2254 on a claim of ineffective counsel in both the murder case and the weapon case, he must submit separate petitions. Rule 2(d), Section 2254 Rules. The conviction on the weapon charge is separate and apart from the murder conviction.

torney cannot be sued for damages under 42 U.S.C. § 1983 because the attorney does not act under color of law within the meaning of the statute. *Deas v. Potts*, 547 F.2d 800 (4th Cir. 1976). Therefore, it is also apparent to the court that Jackson seeks relief in this case to which he is not entitled, and the complaint is dismissible for this reason.

▆▆▆ Based on the foregoing analyses of the petitions and complaints submitted by Walter Jackson, it is hereby

## ORDERED

(1) The clerk shall file the petitions and complaints without prepayment of filing fees, but no defendant or respondent named by Jackson shall be served.

(2) The petition in *Jackson v. State*, No. 79–1776–5, and the complaint in *Jackson v. State*, No. 79–1779–5, are dismissed for failure of the petitioner–plaintiff to comply with Rule 2(c) of the Section 2254 Rules, and because the petitioner–plaintiff has failed to exhaust remedies available to him in the courts of South Carolina, *provided* such dismissal is without prejudice to Jackson's right to seek § 2254 relief, after state remedies have been exhausted, as to any federal claims decided adversely to his contentions by South Carolina courts, so long as such claims have been fairly presented to the state courts, and have not been waived, expressly abandoned, or are otherwise barred from § 2254 review in a collateral attack.

(3) The complaint in *Jackson v. Crestwell*, No. 79–1777–5, is dismissed, *provided* such dismissal is without prejudice to Jackson's right to file anew (on an approved form of complaint to be sent to him by the clerk) if he can truthfully allege under oath that the officers named falsely accused him of assault and battery with intent to kill by falsifying allegations made to a South Carolina magistrate or a grand jury.

(4) The complaints in *Jackson v. Anderson*, No. 79–1778–5, and *Jackson v. Alexander*, No. 79–1780–5, are dismissed for failure of the plaintiff to state a claim upon which relief can be granted in a § 1983 civil action for damages, declaratory relief, or injunctive relief.

(5) Certificates of probable cause to appeal the dismissals of Nos. 79–1776–5 and 79–1779–5 are denied under Rule 22(b), Federal Rules of Appellate Procedure, for reasons earlier stated.

(6) Permission to appeal *in forma pauperis* each of the dismissals of the complaints herein ordered is denied under 28 U.S.C. § 1915(a), because a review of the material submitted by Jackson reveals that his requests for appeals are not taken in good faith in view of his studied defiance of reasonable instructions sent to him as to the proper manner of seeking federal relief from his state convictions, and under § 1983.

(7) The clerk is directed to send a copy of each of the following items to the Clerk of the United States Court of Appeals for the Fourth Circuit:[16]

(a) Five copies of this order, with attachments;

(b) The order filed May 9, 1979 in Civil No. 79–887;

(c) The original (or an original counterpart) of the petition and the four complaints herein reviewed;

(d) Jackson's letters signifying his intention to appeal any dismissal or rejection of his pleadings in these five cases.

(8) Pending any review of these matters by the Court of Appeals, no further petition, motion, or complaint submitted by Jackson will be filed or docketed if he alleges therein matters that are alleged in the five cases herein discussed.[17] The United States Magistrate at Columbia is authorized to review any further material submitted

---

**16.** Under *Liles v. South Carolina Department of Corrections*, 414 F.2d 612 (4th Cir. 1969), it is not necessary for the clerk to compile a formal transcript of record on appeal.

**17.** *Graham v. Riddle*, 554 F.2d 133 (4th Cir. 1977).

by Jackson to determine whether such material alleges matters raised in these cases,[18] and unless a new issue is raised, to reject any further petition, motion, or complaint by letter sent to Jackson, with a copy to this member of the court. If a new issue should be raised, the petition, motion, or complaint will be considered as to whether the issue has facial merit, and handled in accordance with normal rules of procedure governing prisoners' cases in this district.[19]

---

**18.** To facilitate such anticipated reviews, the clerk will retain a copy of each pleading herein discussed.

**19.** If Jackson should erroneously interpret this provision as an invitation to continue to send frivolous pleadings to this court for filing, he may be enjoined later from abusing the court's processes. Under certain circumstances, a proper order can be entered to enjoin succes-

sive frivolous suits to conserve judicial resources. *Burton v. Haverty's Furniture Company*, No. 73–1932 (4th Cir., January 4, 1974), citing *Ruderer v. United States*, 462 F.2d 897 (8th Cir. 1972); *House v. St. Agnes Hospital*, No. 74–1065 (4th Cir., October 23, 1974), citing *Ruderer* and *Ward v. Pennsylvania New York Central Transp. Co.*, 456 F.2d 1046 (2nd Cir. 1972).